# Wytheville.

## D. H. SYKES v. JANE BROWN.

June 22, 1931.

Present, Prentis, C. J., and Campbell, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*Plummer & Bohannan* and *Willis W. Bohannan,* for the plaintiff in error.

*W. Stanley Burt,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

Jane Brown, a colored citizen of Surry county, brought this action against D. H. Sykes to recover damages for personal injuries inflicted on her by the defendant by striking her with an automobile while she was a traveler upon the highway. There was a trial by a jury, which resulted in a verdict for the defendant. The motion of the plaintiff to set aside the verdict was sustained by the trial court, on the ground that "the verdict was without proper evidence to sustain it." Pursuant to section 6251 of the Code, judgment on the merits was pronounced in favor of the plaintiff and a jury was empanelled to assess plaintiff's damages. The trial on the question of damages resulted in a verdict in favor of the plaintiff in the sum of $2,000.00, and thereupon the court entered up judgment on the verdict.

In view of our ultimate conclusion, we deem it unnecessary to set forth the facts shown or to enter upon a detailed discussion of the alleged conflict in the evidence. While it is true that the enactment of section 6251 conferred enlarged powers upon the trial courts, it is well settled by the decisions of this court that trial courts have no greater power over verdicts than they had before the enactment of the statute.

In *Flowers* v. *Virginian Ry. Co.,* 135 Va. 367, 116 S. E.

672, it is held that the statute was not designed to materially change or affect the control of trial courts over the verdict of the jury.

It is also well settled that a trial court is not warranted in setting aside a verdict merely because the court, if upon the jury, would have rendered a different verdict. The action of the trial court must proceed from a firm conviction that the verdict is plainly wrong or without evidence to support it. The main purpose of section 6251 is to put an end to an action, if and when the ends of justice may be attained, and put the losing party to his writ of error. *Clark* v. *Hugo,* 130 Va. 99, 107 S. E. 730.

Under the provisions of section 6365 of the Code, similar power is conferred on this court. But the power thus conferred by section 6365 will not be arbitrarily exercised when, in the opinion of this court, the ends of justice demand that instead of entering final judgment a trial *de novo* should be had.

In the petition for a writ of error prepared by eminent counsel, defendant prays that this court render final judgment in his favor on the verdict in the first trial, "or else that the case be remanded for a trial *de novo.*"

The rule laid down by Kelly, P., in *Morris & Co.* v. *Alvis,* 130 Va. 448, 107 S. E. 664, 669, is, we think, applicable to the case at bar. There it is said:

"* * * The case was tried below and was originally presented to this court in such a way as to indicate that both parties probably regarded the question as one within the province of the jury. We approve the policy and purpose of sections 6251 and 6365 of the Code, looking to a speedy determination of litigation and the rendition of a final judgment wherever it is clear that, upon the facts before it, the court can by such order attain the ends of justice. In this instance, we are not sure that these ends could be attained by a final order, but, viewing the case as a whole, we are of opinion that it should be remanded

for a new trial, and an order to that effect will accordingly be entered."

In view of our conclusion that a new trial should be had, and anticipating that some of the questions arising in this case will be presented in the future, we deem it essential to dispose of them.

The declaration alleges that as a result of the injuries inflicted upon the plaintiff by the defendant, plaintiff was compelled to enter a hospital in order to have her injuries treated; that the cost of the medical treatment received amounted to a considerable sum of money, and that the same was a proper element of damages. To prove the expenses incurred, Dr. Creecy was examined as a witness and, over the objection of defendant, testified as follows:

"Q. Are you connected with the Buxton Hospital in any way?

"A. Yes, sir.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. Do you know, doctor, or have you any memorandum from which you can tell, what the hospital expenses of Jane Brown were when she was over there?

"A. No, sir; I haven't that with me.

"Q. Would you be able to say, if you were shown a statement, whether or not the statement would be correct?

"A. I would be able to say whether it was approximately correct, just from my knowledge of what the daily cost of caring for a patient is. I have no means of saying that it is absolutely correct.

"Q. I show you this paper, which purports to be a statement of the expense account of Jane Brown in the Buxton Hospital, together with the amounts paid on it, and ask you if that is a correct statement?

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. Please state, then, doctor, whether or not from your knowledge of the charges over there for similar services, you would say that that is at least an approximate statement?

"A. (Examining) Yes, sir; this is approximately correct. By the court:

"Q. What is the amount of it, doctor?

"A. The total amount is $404.65.

"By Mr. Burt:

"Q. Does that account show that any portion of that amount of money has been paid?

\*    \*    \*    \*    \*    \*    \*    \*    \*

"The court: Yes.

"A. This statement shows that a part of the bill has been paid, and that there is a balance due.

"Q. Of how much?

"A. $64.00."

■■    The objection should have been sustained. The witness did not undertake to state the correct amount due the hospital, or that same was paid by the plaintiff, or that she was primarily liable for the bill. From his general knowledge of hospital expenses, he merely approximated the expenses incurred. Defendant was entitled to know the exact amount of the surgical and hospital bill, who paid same or who was liable therefor. The objection should have been sustained for the further reason that the evidence was secondary. The paper introduced as a statement of the expense account only purported to be a correct statement. .The further testimony of the witness divulged that he had examined the books of the hospital. If the account was kept in a book, "the book itself was the best evidence to prove its contents, and secondary evidence is incompetent to prove it unless the nonproduction of the book is satisfactorily accounted for, which ought to have been shown before the evidence of its contents was given to the jury." *Pidgeon* v. *Williams' Adm'rs*, 21 Gratt. (62 Va.) 251.

The refusal of the court to give the following instruction is complained of:

■■    "The court instructs the jury that in assessing damages in this case they cannot take into consideration any ex-

penses incurred for hospital care, nursing, medical or surgical treatment."

In support of the instruction it is argued that "there is not a word of evidence in the record that Jane Brown herself paid one cent of the expense incurred." Payment of the expense of treatment is not essential to a recovery. If plaintiff is liable for the debt incurred, that is all that is necessary. While the record shows that a major portion of the bill has been paid, it does not show that plaintiff paid it. If it was paid by a volunteer, then plaintiff would not be entitled to recover on this item of damage. In the present state of the record, the instruction was not a proper one. The record discloses there is due to Dr. E. M. Easley by plaintiff the sum of $67.50 for medical services rendered her as a result of the accident.

■ ■ It is also assigned as error that the court erred in refusing this instruction:

"The court instructs the jury that if they believe from the evidence that the plaintiff's injuries are permanent, they shall, in determining the amount of the damages sustained by the plaintiff by reason of loss of earnings and suffering, take into consideration her age and the probable duration of her life."

It was not error to refuse the instruction as offered. The vice in the instruction is that it coupled together "loss of earnings and suffering." They are independent elements of damages. Age is not to be considered when awarding damages for suffering. Loss of earning power should be considered in connection with the age of plaintiff.

In *C. & O. Ry. Co.* v. *Arrington,* 126 Va. 221, 101 S. E. 415, 425, Prentis, C. J., correctly states the rule thus:

"If, in estimating the plaintiff's damages, they failed also to take into consideration that he was forty-two years of age, and that his earnings from manual labor would naturally diminish because of his advancing years long before he lived out his life expectancy, then they also erred. *Florida, etc., Ry. Co.* v.

*Lassiter,* 58 Fla. 247, 50 So. 428, 19 Am. & Eng. Ann. Cas. 196; Shearman & Redfield on Negligence, sec. 760, p. 2009."

The last assignment of error calls in question the refusal of the court to give this instruction:

"The court instructs the jury that if they find from the evidence that the plaintiff suffered any financial damage by reason of her not being able to work, they shall, in determining the amount of such damages, take into consideration the amount earned by the plaintiff prior to her injury, keeping in mind the plaintiff's age and the possibility that her earning capacity would have diminished, regardless of her injuries, as her years advanced."

The record discloses that plaintiff "is about seventy-six years old," and that her earning capacity prior to the accident was $10.00 a month. The defendant was entitled to have the jury instructed that they could take into consideration the amount earned by plaintiff before the injury, and likewise the probable reduction in earning capacity regardless of the injury. It was error to refuse the instruction as offered.

The judgment will be reversed and the case remanded for a new trial to be had in accordance with the views here expressed.

*Reversed.*

PRENTIS, C. J., and EPES, J., dissenting:

We concur in the order of reversal, but dissent from the order remanding the case, because we think there was sufficient evidence to support the verdict of the jury in favor of the defendant on the first trial, and that judgment should have been entered thereon in favor of the defendant.