# CIRCUIT COURT OF ROANOKE COUNTY

Eva M. Kelly

v.

Kevin D. Thomasson

January 29, 1999

Case No. CL96-119

By Judge Jack B. Coulter

The Pre-Trial Motion in Limine that has been submitted to this Court by the Defendant accompanied by his Memorandum in Support, both being filed on January 20, 1999, presents two issues. The Plaintiff has responded only to the second by her letter dated January 25, 1999, enclosing several articles from the *Virginia Lawyers' Weekly* and urging that the Court adopt the argument that the collateral source rule prohibits the Defendant from reducing the medical expenses "incurred" by the Plaintiff by the amounts "written off" by Medicare.

## I. *The Mention of Insurance, Unless Invited, Is Prohibited*

As to the first issue raised by the Defendant, the prevention of mentioning the word "insurance" by the Plaintiff, her witnesses, and counsel, the law is absolutely clear that such tactic is improper and cause for a mistrial or reversible error. By not responding to this issue, the Plaintiff obviously recognizes the impropriety of bringing the fact of insurance before the jury. The Defendant's Motion, therefore, on this issue is granted, and Plaintiff's counsel is directed not to mention "insurance" during the trial of this case,

including the voir dire of prospective jurors and to so instruct his client and her witnesses.

This ruling, however, is subject to the caveat, and reverse of this prohibition, that Defendant's counsel shall not "invite" such response by making reference, directly or indirectly, by implication or otherwise, to imposing any financial burden on the named Defendant.

## II. *The Write-Off of So-Called Non-Incurred Medical Expenses*

As to the second issue, the defendant contending that the Plaintiff should be limited in her proof of medical expenses, both in the past and prospectively in the future, to those charges acceptable to Medicare, thrusts upon this Court the resolution of an issue that has confounded almost every trial judge in the Commonwealth, at least as to medical expenses already "incurred," whether partially "written-off," bankrupted, or otherwise no longer due.

The question, however, as to applying some unknown discount to future medical expenses not yet "incurred" has not yet been as fully developed, if at all, in the numerous decisions on this controversial issue — at least not as this Court's research has uncovered. The difficulty of developing such evidence *in futuro* without mentioning insurance and the uncertainties of Medicare would seem to be an almost insurmountable obstacle. The problem is difficult enough as it is without resort to some mystical crystal ball as to what the future might bring relative to the role of Medicare and the details of its program.

The Defendant contends at the close of his argument "that a reasoned analysis precludes Plaintiff's recovery of the written-off portions of her bills" and that "it would be *unfair* and *improper* to allow Ms. Kelly to recover for medical expenses that were not actually paid or *incurred* by anyone … ." Is the Defendant's suggestion, then, that the decision contrary to his view decided by at least fifteen Circuit Court Judges of this Commonwealth[1] are not the result of *reasoned* analysis? And what is "unfair and improper" is in the eye of the beholder. Although fairness and propriety is always a factor in the resolution

---

[1] Circuit Court Judges Everett A. Martin, Jr.; Robert P. Doherty, Jr.; James A. Cales, Jr.; Lydia C. Taylor; Junius P. Fulton, III; W. C. Andrews, III; Thomas V. Warren; Kathleen MacKay; J. Howe Brown; J. Michael Gamble; Joseph F. Spinella; John C. Morrison, Jr.; William F. Rutherford; Von L. Piersall; and Jerome James.

of any dispute, it is the law that controls. What is "unfair and improper" to one side is always "fair and proper" to the other.

It must be recognized, therefore, at the outset by all members of the bench, bar, and academia that there are significant areas in honest and objective dispute concerning this controversial issue of whether write-offs of medical expenses should or should not be allowed. Ultimately, the question must be definitively resolved by our Supreme Court or the General Assembly.[2] Until that time, the trial judge must bring the *best* reasoned analysis to bear that his objective judgment, legal mind, and interpretive capacity of words and intents can generate, including as well considerations of "fairness" and "propriety."

The January 25, 1999, issue of the *Virginia Lawyers Weekly* in Section B under Virginia Practice identifies this "Fight Over Incurred Expenses" as one of the major "Issues to Watch in the Coming Year," giving the box score in favor of the defense bar as 33 to 10. The source of this count,[3] however, reports the actual score to be more like 40 to 11 against plaintiffs.

The most recent decisions by Judges Von L. Piersall of the Portsmouth Circuit Court in *Perry v. McClure*, 47 Va. Cir. 504 (1998), William F. Rutherford of the Norfolk Circuit Court in *Tatum v. Lally*, and Jerome James also of the Norfolk Circuit Court in *Dubina v. Boyd*, 47 Va. Cir. 537 (1999), each favoring the plaintiff, however, were not included in this VADA statistical analysis as originally prepared. Hence, for whatever it may be worth, the current count is more like 40-14 (or fifteen if the decision of Judge Kathleen MacKay, who joined in Judge J. Howe Brown's decision in *Boehm v. Machado*, is included). And the forty cases favoring the defendant include three by Judges Wilkinson and Markow and two from each of the following: Judges Williams, Scott, Stump, Gill, and Johnson.

---

[2] 1999 House Bill 2745 apparently addresses this issue favoring the position of the defense bar. In fact, this proposed bill goes much further for the "provable damages" being defined "does not include medical expenses which the plaintiff or decedent has no legal obligation to pay," thus totally eliminating the collateral source rule in its entirety. See also HB 2469 which proposes to limit medical damages in medical malpractice cases to "actual payments received by the health care providers."

[3] Jennifer Lee Parrish, Esq., of Roberts, Ashby & Parrish of Fredericksburg, who attempts to maintain a complete record for the VADA.

## A. *The Defendant's Position*

Both sides agree that there is no Virginia Supreme Court decision that addresses the specific issue prompted by the Defendant's Second Motion in Limine. This will almost certainly, however, not be the case for long unless the legislature settles the controversy beyond final judicial review.

For the case at bar, which requires immediate resolution before the trial that is scheduled to begin only several days hence, the merits of the matter demand as thorough and reasoned analysis as this single mind can contribute. And there is compelling argument on both sides of the issue. First, as to the Defendant's position:

The Defendant contends, apparently supported by at least twenty-eight distinguished circuit court judges, three federal district court judges, and one general district court judge, that it is simply unfair and poor policy to make a defendant's insurance carrier, the unidentified primary party in interest, "pay" for debts that are no longer due. Of course, as the law now stands, there is no direction from a jury's verdict that *any* bills be paid, whether "incurred" or not.

Whether medical bills have been cancelled by bankruptcy or reduced by contract with some health care insurer or discounted by the rules and regulations of Medicare or Medicaid, the Defendant urges that to allow a plaintiff to recover the expenses for medical care for which he is no longer liable and, hence have not been or are or no longer "incurred," should not be tolerated. To include such "phantom" items in their full amount for jury consideration when portions thereof have been eliminated is simply misleading, untruthful, and smacks somewhat of dishonesty. "Unjust enrichment" should not be encouraged.

All of this is true and somewhat compelling. The recent Virginia Supreme Court decision in *State Farm v. Bowers*, 255 Va. 581 (1998), on the contractual issue of med pay coverage, which limits such recovery to amounts actually incurred, lends tangential support to the Defendant's argument. The language of the policy at issue, however, was the controlling factor in that case.

The instruction on damages set forth in V.M.J.I. No. 9.000 (VMJI I-185) and almost universally accepted by bench and bar alike uses the language

"incurred," reading in pertinent part as follows: "(5) any medical expenses *incurred . . .*"[4]

The considered order of one of the senior judges of this 23rd Judicial Circuit, the Honorable Roy B. Willett, granted the Defendant's Motion in Limine in *King v. Sowers et al.* (City of Roanoke Case No. 93-1005, 1995) to exclude "any claim for money written-off in compliance with Medicaid or with an insurance agreement . . . ."[5]

Several of the decisions upholding the Defendant's position in his Second Motion in Limine do not address the collateral source rule, which gives some comfort to the Plaintiff's bar. Those cases that do, however, distinguish the "collateral source rule" contending that the very term "collateral source" implies a source of payment and that it would create a double recovery for the Plaintiff, an undeserved windfall or unjust enrichment.

One of the leading cases from the Defendant's point of view is *Sykes v. Brown*, 156 Va. 881 (1931), relied on in many of the decisions upholding the disallowance of medical expenses in whole (bankruptcy discharge) or in part (the portions "written-off"). The one sentence in the *Sykes* opinion which has given credibility to the Defendant's contention pronounces:

> Payment of the expense of treatment is not essential to a recovery. *If plaintiff is liable for the debt incurred, that is all that is necessary ... .*

(Emphasis added.) From this declaration, the argument is advanced that if a plaintiff is no longer "liable," then he should not recover for that which he is no longer obliged to pay. Thus, logic would dictate that no medical expenses that a plaintiff is no longer obliged to pay should also be disallowed — there is no longer any "liability" on those bills that have been paid!

The context of this sixty-eight year old decision, however, embraced several other issues. There had been no evidence that the Plaintiff had paid "one cent of the expense incurred." That was the critical holding; the showing

---

[4]  The missing conclusion represented by the three dots "..." will be noted later.

[5]  But such expenses written-off as "professional courtesy" were expressly permitted! Also, Jonathan Apgar, now a judge of the same judicial circuit, was one of the Plaintiff's attorneys urging the allowance of the "write-offs" which, of course, now that he has assumed the bench, would not influence his judicial function of fairness and objectivity.

of actual payment was not required. The sentences that followed, however, vividly demonstrate the light of that era and the absence of any consideration of the collateral source rule:

> While the record shows that a major portion of the bill has been paid, it does not show that plaintiff paid it. *If it was paid by a volunteer, then plaintiff would not be entitled to recover on this item of damage.*

(Emphasis added.) That last, italicized sentence is clearly not the law today. This is inferentially recognized in Judge Willett's Order excluding from disallowance bills written-off by "professional courtesy" or the holding in *Rayfield v. Lawrence*, 253 F.2d 209, 213 (4th Cir. 1958), which allowed the "unincurred" medical bills in evidence even though the plaintiff had been entitled to "free military hospitalization").

## B. *A Critique of the Authorities Submitted by the Defendant*

The Defendant in his Argument and Authorities on this issue cites only four cases: *Sykes v. Brown* (1931); Judge Willett's Order in *King v. Sowers* (1995); Judge Stump's Order in *Fields v. Fields* (1995); and the VADA article in the 1994 *Journal of Civil Litigation*, vol. 6, no. 1, citing *Walker v. Long* (Circuit Court, City of Richmond, 1993). Defendant's counsel urges a *reasoned* analysis, which is to be commended and presumably welcomed. Although Judges Willett and Stump undoubtedly had reasons for their decisions, their Orders contain no "reasoned analysis." And though the Defendant suggests in his Memorandum that "these courts (obviously) *reasoned* that the collateral source rule does not apply," neither Judges Willett nor Stump mention the collateral source rule in their brief orders.

Furthermore, the *Walker* case involved the bankrupting of the Plaintiff's medical bills. Judge Johnson was obviously impressed with the fact that "it [was] not the Plaintiff's status at the time of the accident or treatment which would give her a double recovery," but "it [was] her positive act after treatment; to wit, filing bankruptcy." An objective and *reasoned* analysis of this decision, though Judge Johnson does hold the collateral source rule inapplicable because of the additional reasons that the Plaintiff was not *ultimately* liable and that the collateral source implied a source of payment, he

was obviously concerned that approving the bankrupted bills "might encourage plaintiffs to declare bankruptcy" and that "it would be poor public policy to encourage bankruptcies" for such a purpose.

Judge Johnson does quote with apparent approval the ruling in *Schickling v. Aspinall*, 235 Va. 472 (1988), which tries to balance the two competing principles of tort law that where two potential windfalls are involved, the law favors the victim of the wrong rather than the wrongdoer.

The following observations by Judge Johnson is particularly significant:

> Such a windfall (allowing the jury to consider as part of the plaintiff's damages medical bills that had been discharged in bankruptcy) is unlike those in mine-run collateral source cases because the third party either gratuitously or by contract is providing the benefits.

One of the most reasoned decisions relative to the issue was crafted by U. S. Western District Court Judge Glen Williams in *McAmis v. Wallace*, 980 F. Supp. 181 (W.D. Va. 1997). This keen analysis is included in the more recent VADA article on the subject "Are Medical Bills That Must Be 'Written-Off' under Medicare Admissible under the Collateral Source Rule?", beginning at page 341 in the 1997 *Journal of Civil Litigation*, vol. 9, no. 4. This balanced presentation by the VADA of two conflicting views also includes Judge Everett A. Martin, Jr.'s well-reasoned opinion favorable to the plaintiffs in *Smith v. Jernigan*, 42 Va. Cir. 395 (1997), from the Circuit Court of the City of Norfolk decided June 9, 1997.

Judge Williams' cogent analysis, disallowing as damages that which had been written-off of the plaintiff's medical expenses, tends to support the Defendant's argument, but the write-offs were generated by the rules of Medicaid, not Medicare. It is a class 6 felony under Virginia law (see Va. Code § 32.1-317) for a health care provider to attempt to recover any additional charges from Medicaid patients.

Judge Williams, however, introduced another principle somewhat akin to the collateral source rule that is worthy of attention because of how he analyzed the case before him. It is the "benefit of the bargain rule" which he considers in depth under paragraph (c) of his opinion:

This *benefit of the bargain* argument may permit a plaintiff to recover the actual benefits paid by the government in *Manko*[6] or gratuitously provided in *Rayfield*.[7] It cannot, however, be extended so far as to allow plaintiff to recover discounts that she did not bargain for and that did not result in even potential, personal liability. Medicaid is an emergency measure for those unable to provide for their own health care. [Authorities cited.] *The payment of plaintiff's bargain with Medicaid is that payment of her medical bills by the nation's taxpayers.*

(Emphasis added.)

Two of the other cases relied on by the Defendant involved Medicaid patients (*King v. Sowers* and *Fields v. Fields*). Of the other two, in *Walker v. Long*, the issue involved the bankruptcy of the bills, and the Court in the *Sykes* case was apparently unaware of the collateral source rule. Thus we come to subject the Plaintiff's position to critical and reasoned analysis.

## C. *The Plaintiff's Position*

Plaintiff's counsel urges this Court to review several articles from *Virginia Lawyers Weekly* which pointedly include references and excerpts from the powerful decision of Judge Robert P. Doherty, Jr., of this same 23rd Judicial Court in which the present case is lodged, the same circuit, of course, in which Judge Willett presides. A conflict to resolve within the circuit, therefore, is thrust unwittingly and unwantingly on a judge retired from daily service but nonetheless keenly concerned (as we all are) with what is right and just upon objective review of the law and consideration of the fairest result of competing arguments each with merit.

In *Hill v. Tuttle*, 45 Va. Cir. 296 (1998), decided within the year on April 2, 1998, and not involving a plaintiff eligible for Medicaid as was the apparent situation before Judge Willett, Judge Doherty colorfully and accurately describes the collateral source rule, which is not addressed by Judge Willett in his order, as follows:

---

[6] Manko v. United States, 830 F.2d 831, 836 (8th Cir. 1987).

[7] Rayfield v. Lawrence, 253 F.2d 209, 213 (4th Cir. 1958).

This holding [the apparent genesis of the collateral source rule in the 1877 decision of *Balt. & Ohio R.R. Co. v. Wrightman's Adm'r*, 29 Gratt. (70 Va.) 431] is not just a string of fact specific legal words, and neither does it contain a black letter rule that must be followed by rote. *Instead it is the embodiment of a concept.*

(Emphasis added.) And it is a *concept* that includes such definitions as:

the extent of [the Defendant's] liability is not to be measured by deducting financial benefits received by the plaintiff from collateral sources.

*Owen v. Dixon*, 162 Va. 601 (1934). And from the same case:

Compensation ... received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages the tortfeasor owes.

In rhetorical language, unusually but admirably forceful for a trial judge, Judge Doherty concludes:

Is it possible to read and savor the language of these cases [defining the collateral source rule] and not come to *the inescapable conclusion that any benefit* bought and paid for by the injured party will not be used to reduce the damages owed by the tortfeasor. The answer is clearly, no. *Common sense and stare decisis compel this result.*

(Emphasis added.)

Finally, the maxim of who should receive the benefit of any "windfall" is noted by Judge Doherty:

If these benefits are to be viewed as a windfall to the plaintiff, then because the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrongdoer.

Can concepts of fairness dictate otherwise?

It is a fair, objective, and reasoned analysis of the well-established collateral source rule, and whether any exceptions should be imposed on it that is the function and burden of this opinion. At issue, when all is said and done, is the fair measure or *estimate* of damages to which a party, presumably injured by the wrong of another, is reasonably entitled, not the application of precise formulas or the repayment of bills usually already paid, discharged, or forgiven. The standard instruction on damages is couched in language that the jury "*may* consider" a number of specific elements including, as already incompletely noted: "(5) any medical expenses incurred *in the past* . . .!"

If Judge Johnson in *Walker v. Long,* relied on by the Defendant, can disallow medical bills that have been bankrupted because the event of bankruptcy happened after the accident or treatment, then the same rules of logic should recognize that the liability incurred by an injured victim "*in the past*" — that is, at the time of the accident or treatment and only subsequently reduced by a source other than the tortfeasor — qualifies as an element that the jury may consider under the standard instruction on damages. Is the time-line to be extended in only one direction?

The jury's function, it must be remembered, if it has been decided that a plaintiff should recover, is to fix his damages under the guidelines of the Court's instructions on damages. The reference to medical expenses in the instructions is to help the jury evaluate some of the other elements that are to be considered, principally "the bodily injuries he sustained and their effect on his health according to their degree ... ." The jury is presently left in the dark as to whether any medical expenses have been paid. Frequently, they speculate in the secrecy of their deliberations on how much might still be due and whether the named defendant will have to pay any award. Furthermore, they rarely contemplate any tax-deductible benefits that might be available.

Of further help in the analysis of this critical and developing area of the laws of torts and damages is the very recent decision from the Supreme Court of a sister state, the case of *Montgomery Ward Co. v. Anderson,* 976 S.W.2d 382 (Ark. 1998).

This Court in a very scholarly opinion identified the issue, being one of first impression in that jurisdiction, of "whether the forgiveness of a debt for medical services is a collateral source to be sheltered by the rule." Holding that it was a collateral source, the Court quoted from other Arkansas authorities:

> A trial court must exclude evidence of payments received by an injured party from sources collateral to the wrongdoer, such as private insurance or *government benefits.*

(Emphasis added.) Further:

> Recoveries from collateral sources do not redound to the benefit of a tortfeasor, even though double recovery for the same damages by the injured party may result.

The analysis from Harper, James & Gray on *The Law of Torts* (2d ed. 1986), vol. 4, § 25.22 at page 651 is noted:

> But in these cases, the courts measure "compensation" by the total amount of the harm done, even though some of it has been repaired by the collateral source, not what it would take to make the plaintiff whole. It is "compensation" in a purely Pickwickian[8] sense that only half conceals an emphasis on what defendant should pay rather than on what plaintiff should get.

If a plaintiff should be limited in his claim for damages only to what will make him "whole," then *all* of the medical bills that have been paid by insurance or the government through Medicare or otherwise should be disallowed, as well as wages gratuitously continued despite absences from work by a sympathetic employer or the medical expenses of military personnel whose hospital expenses have been provided without charge. The collateral source rule would thereby be completely emasculated, which has been the goal of the insurance industry for years.[9]

Another source of enlightenment comes from The Restatement (Second) of Torts, § 920A(2), which defines the general rule:

---

[8]  *Pickwickian*: "intended or taken in a sense other than the obvious." Webster's Collegiate Dictionary (10th ed., 1993), p. 879.

[9]  Criticism of the basic collateral source doctrine is thoroughly presented in the Harper, James & Gray Treatise in the same § 25.22 referred to above, beginning at page 648 and extensively annotated in footnote 7, pages 650-651.

(2) payment made to *or benefit conferred* on the injured party from other sources are not credited against the tortfeasor's liability … .

(Emphasis added.) Comment b to that Restatement section explains that if the plaintiff is responsible for the benefits received, either from a third party *or established for the plaintiff by law*, the plaintiff should not be deprived of the advantage that it confers. Another way to state the rule is to say that:

it is the tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives.

Restatement (Second) of Torts, § 920A, Comment b.

Still another excellent discussion of the overall subject appears in Stein's *Personal Injury Damages* (3d ed.), vol. 2, part 3, under chapter 13 on the Collateral Source Rule, especially § 13.6: "Federal Government payments - Medicare, Medicaid, Social Security, etc." (pp. 13-27 through 13-36).

See also another recent appellate court case supporting the argument of plaintiffs: *Cooper v. Borden, Inc.*, 709 So. 2d 878, 882 (La. Ct. App. 2d Cir. 1998).

### III. *The Court's Decision*

The motion to reduce the medical expenses claimed by any write-off generated from a collateral source is overruled. It is, of course, obvious from reading the Court's analysis of the Plaintiff's position that the Defendant's Motion in Limine to eliminate the write-offs applied to the Plaintiff's medical expenses will be overruled, and it is hereby so ordered. This result comes with full awareness that the Circuit Court judges of our Commonwealth have come to a different conclusion by an apparent margin of more than 2 to 1, and those judges are every bit as keen of mind and conscious of what is fair, if not more so, than the undersigned. Yet one must do his duty as he is given the light to see that duty. So, with genuine concern with the apparent self-conceit of "overruling"[10] so many colleagues on the bench, this Court rules that the

---

[10] Actually, of course, with only "disagreeing with."

Plaintiff in the case at bar may show all of her medical expenses that Va. Code § 8.01-413.01 has already in the case at bar been received as presumptively reasonable.

In summary, then, the Court is impressed by the strong, scholarly, and compelling opinion of Judge Doherty in *Hill v. Tuttle*, a reasoned ruling that frankly should resolve the matter throughout the state, and hopefully for this Circuit. Although the independent judgment of individual judges should never be sacrificed or compromised for the sake of unanimity, the bar at least of this circuit should not have the option of shopping for an uncommitted judge on an issue now so frequently raised in almost every personal injury case. For the sake of certainty and consistency — at least for the moment — the Doherty Decision should stand.

Concluding, then, the reasons that the collateral source rule and the concept upon which it is founded should apply are submitted as follows:

1. The *concepts* of the collateral source rule, which is firmly established in this Commonwealth, clearly embrace more than mere financial considerations but *all* benefits derived from sources other than the tortfeasor. As Judge Doherty concluded: *"common sense and stare decisis compel this result."*

2. The "benefit of the bargain rule," so eloquently advanced by Judge Williams in *McAmis v. Wallace*, adds weight in support of the collateral source concept. He who is responsible for generating a benefit should receive the fruits of his bargain, what he paid for in premiums or what the law has sanctioned for his benefit should be his to enjoy, not a liability insurance carrier who contributed nothing that produced the benefit.

3. To permit the allowance of deducting "write-offs" would invite "discounts" of those write-offs by the amount of premiums paid, or some proration thereof,[11] and sanction the potential introduction before a jury of health insurance by implication or otherwise which would destroy the basic tenet of the collateral source rule.

---

[11] See *Conley v. Foster*, 335 S.W.2d 904 (Ky. 1960), and *Helfend v. Southern Cal. Rapid Transit*, 465 P.2d 61 (Cal. 1970), suggesting that the premiums paid by a plaintiff for health insurance coverage should be included upon proper allocation as part of the "economic damages" *incurred.*

4. Additionally, under the rules of Medicare, the government could claim reimbursement or prorations thereof from any prevailing plaintiff of the medical expenses that Medicare had actually paid, an evidentiary nightmare that a plaintiff would be obliged to advance.

5. Furthermore, most health care providers receive an annual fee or payment from the health insurance carrier in addition to the amount paid on a plaintiff's individual bills. Furthermore, there is frequently a financial incentive award sometimes given to the provider if certain standards or goals are met. If the write-off argument were to prevail, full fairness to a plaintiff would permit him to prorate these additional fees or bonuses in order to reduce or even eliminate the write-offs.[12]

Trials and the limitless discovery procedures and practices that they have engendered should not be further burdened or expended by disregarding the rule of stare decisis that cloaks the collateral source rule and the additional detail, conflicts, and evidentiary problems that would result by permitting erosion of that time-honored concept.

---

[12] See the argument advanced on this prospect in *The Journal of the Virginia Trial Lawyers Association*, Summer Issue, 1998, "Health Insurance Write-offs Irrelevant Under Collateral Source Rule" by Roger I. Cregar beginning at page 2 and particularly pages 6-7.