# CIRCUIT COURT OF THE CITY OF NORFOLK

Charles A. Daniels, Jr.

v.

Wanda J. Owens

December 21, 2000

Case No. (Law) L97-1706

BY JUDGE MARC JACOBSON

Defendant Wanda J. Owens moves to exclude the admission into evidence medical bills allegedly relating to the injuries sustained by Charles A. Daniels, Jr. Defendant alleges that the bills are inadmissible on the ground that they are discharged or effectively discharged as a result of the Bankruptcy Petition (Petition) filed by Plaintiff in the United States Bankruptcy Court for the Eastern District of Virginia, Norfolk Division. It is not disputed that the bills were incurred prior to the bankruptcy filing by Plaintiff.

At the time of the filing of the Petition by Plaintiff, and no later than the conversion of the Petition from a Chapter 13 to a Chapter 7 no asset case, nine medical bills of Plaintiff existed directly related to the accident which is the subject matter of the above captioned proceeding. Plaintiff acknowledges that three of the medical bills were actually listed on his bankruptcy schedules and Plaintiff also acknowledges the existence of six other bills at the time of the Chapter 7 proceeding not listed on his bankruptcy schedules. Defendant contends that all nine bills in question were discharged or effectively discharged through the bankruptcy, and, therefore, Defendant argues Plaintiff is no longer responsible for the bills and should not be allowed to recover for them, making the bills themselves inadmissible as evidence.

Plaintiff asserts that he should be able to introduce as evidence the six medical bills not listed or referred to in his bankruptcy schedules, suggesting that he deliberately failed to include the bills in the bankruptcy schedules

because he intended to pay them. In essence, Plaintiff's position is that he is still legally, or perhaps morally, responsible for the six medical bills not listed in his bankruptcy schedules. The Plaintiff's bankruptcy case was treated as a "no asset case" and Plaintiff received a Bankruptcy Discharge under § 727 of Title 11 United States Code, (the Bankruptcy Code) on September 18, 1998.

While Plaintiff at this time alleges that he did not intend to list the six medical bills in question in his bankruptcy schedules, it is undisputed that Plaintiff's bankruptcy ended up as a "no asset" case.[1] The case of *In Re Carberry*, 186 B.R. 401 (Bankr. E.D. Va. 1995), deals with debts not listed in a "no asset" bankruptcy proceeding although the case does not indicate whether such debts were deliberately omitted from the original bankruptcy schedules or proceedings. In the *Carberry* case at p. 402, it is stated:

> Furthermore, the court should not reopen a bankruptcy case where it appears that to do so would be futile and a waste of judicial resources. *See In re Yoder Co.*, 158 B.R. 99, 100 (Bankr. N.D. Ohio 1993). The reopening of a closed no asset, no bar date, chapter 7 case to schedule omitted creditors serves no purpose. *See Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1437 (9th Cir.1993); Lauren A. Helbling & Honorable Christopher M. Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion over Reopening Cases and Amending Schedules to Add Omitted Debts*, 69 Am. Bankr. L. J. 33, 37-47 (Winter 1995). The omitted debt was either discharged upon the entry of the discharge order pursuant to 11 U.S.C. § 727 or is excepted from discharge pursuant to 11 U.S.C. § 523(a). *See In re Anderson*, 72 B.R. 495, 496-97 (Bankr. D. Minn. 1987). There is nothing in the bankruptcy code that provides for a retroactive discharge. *In re Beezley*, 994 F.2d at 1434.

It is interesting to note in the *Carberry* case that the creditor Signet Bank of Maryland objected to the debtor reopening the bankruptcy case to add

---

[1] Section 727(b) reads: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title." 11 U.S.C. § 727(b).

Signet as an unsecured creditor and alleged that the debtor purposefully or intentionally omitted listing Signet Bank of Maryland as a creditor on debtor's schedule. In footnote 1, the Court in *Carberry* stated:

> There is conflicting evidence as to whether the omission was intentional. *Because this fact is not dispositive on the issue currently before me*, I will not make a finding of fact at this point as to whether the omission was intentional.

(Emphasis supplied.)

In essence because Plaintiff's bankruptcy was a "no-asset" case, he is not legally responsible for the medical bills in question as they were discharged in spite of his failure to list them. *See id.*

In argument before this Court, counsel for Plaintiff attempts to equate his ability to collect damages for the six medical bills with the "collateral source" rule and, more specifically, with the rulings set forth by the Virginia Supreme Court in the case of *Acuar v. Letourneau*, 260 Va. 180 (2000). The *Acuar* case deals with insurance benefits relating to medical bills where a portion of the medical bills is written off or discharged. The Virginia Supreme Court held that the full amount of the medical bills is admissible into evidence, notwithstanding the fact that a portion was either written off by the provider or somehow not paid by the insurance carrier, reasoning that the injured party paid premiums to the insurance company for coverage and should be therefore compensated in light of such payments. Further, the Court reasoned that the fact that the insurance company did not have to pay the full amount of a given medical bill should not be a windfall for the insurance carrier or a tortfeasor, but should benefit the insured. *See id.*

By contrast, someone who discharges his medical bills in bankruptcy has not affirmatively engaged in behavior to protect himself, as the plaintiff in *Acuar* did by making insurance payments. Instead, he has retroactively taken advantage of a potential windfall. If the law would allow recovery for bills discharged in bankruptcy, it would encourage debtors to discharge the debts that would otherwise be paid by a judgment rendered in their favor and retain the funds.

If Plaintiff's suggestion is that he intentionally declined to list the six medical bills that he seeks to introduce as evidence in the above-captioned proceeding in his bankruptcy schedules, Plaintiff would receive a windfall without having any legal obligation to pay any of those monies to any of the medical providers omitted on the bankruptcy schedules. Plaintiff further could possibly take the position that should there be a recovery in his personal injury

suit after having introduced the six medical bills which he seeks to introduce as evidence, the recovery really reflected only pain and suffering and not the medical bills, or only a portion of the medical bills, or that it could not be determined as to how a jury arrived at a given figure determined for recovery.

The Court would note that normally, in a bankruptcy proceeding, a debtor is asked if he or she has listed all of his assets and all of his debts or liabilities. It would be odd, indeed, if a debtor, in this instance the Plaintiff, would have advised the Bankruptcy Trustee that a number of debts were not listed. There does not appear to be anything that has been presented to this Court in the bankruptcy schedules so indicating.

In addition to the fact that the health care providers referred to in the six medical bills in question are considered legally discharged in bankruptcy, or at least will not be able to seek payment from the bankrupt Plaintiff, there are substantial public policy concerns arising out of the position taken by Plaintiff as to the six medical bills which he seeks to introduce into evidence after having filed bankruptcy with said bills being in existence at the time of the bankruptcy filing. This Court concludes that such concerns militate against the position advocated by Plaintiff.

The Court rules that the six medical bills in question cannot be introduced into evidence in the trial of the case. The motion of Defendant to exclude said medical bills is sustained.