No. 56,144

STATE OF KANSAS, *ex rel.* ROBERT T. STEPHAN, Attorney General, *Appellee,* v. WOLFENBARGER and McCULLEY, P.A., *Appellant,* and LATIMER, MILLER, SOMMERS AND WALLACE, P.A., and ROBERT D. MILLER.

(690 P.2d 380)

Opinion filed October 26, 1984.

*Herbert A. Marshall,* of Marshall, Hawks, Hendrix, Schenk and Nichols, of Topeka, argued the cause and *Robert J. Perry,* of the same firm, was with him on the brief for the appellant.

*Dan Biles,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is a suit against Wolfenbarger and McCulley, P.A., for the negligent design of the ventilation system of the clinical science and pathology building at Kansas State University (KSU), Manhattan.

The State of Kansas desired to construct a veterinary medicine complex at KSU. The work was divided into three phases. Phase I was the comparative medical science building. Phase II was

the teaching building. Phase III was the clinical science and pathology building.

On August 3, 1972, the State of Kansas entered into an agreement with appellant, the architectural firm of Wolfenbarger and McCulley, P.A., to design the clinical science and pathology building. Included in this building were classrooms and lecture halls. Also within this building surgeries and autopsies were performed on diseased animals; due to the presence of disease and animals the building codes required large volumes of circulating fresh air.

Pursuant to the contract between the State and appellant, appellant retained the consulting services of a structural and a mechanical engineer. The mechanical engineering firm of Latimer, Miller, Sommers and Wallace, P.A., provided the design for the building. They prepared the design and specifications for both the mechanical and electrical portion of the project, which included heating, air conditioning, power supply and ventilation. The ventilation system was designed to pull in outside air through 13 louvers, large metal vents, which were built into the walls of the second or top floor of the building. The air moved through the inside of the building through an area called the "ceiling plenum." The ceiling plenum was directly above the ceilings of the second floor offices and below the exterior roof. The air moved along the ceiling plenum to air handling units within the building. The air handling units would then heat or cool the air as required. As this occurred, the old air would be exhausted. Pursuant to the mechanical engineers' specifications, the louvers were to have a 40% free air space. This would require the louvers to close 60% of the 8 by 12 foot space through which the air passed. 12 of the 13 louvers were installed with only 20% free air space.

Once the plans and specifications for the building were drawn up, the State approved them and let them out for bid. The general contracting firm of Coonrod and Waltz was awarded the contract. The building was completed in late 1978.

In December 1978 and January 1979, it was discovered that during each snowfall a large quantity of snow was ingested into the building through the louvers. The snow formed drifts a foot deep above the offices and classrooms. When the snow melted, it

damaged the raw batting insulation, gypsum board, and acoustical ceiling tile, collapsing some of the ceilings.

The services of Black and Veatch, consulting engineers, were retained to help the State determine the cause of the snow ingestion. The State eventually chose to correct the problem by extending the plenum air supply systems onto the roof of the building into eight snow chambers resembling huge dog houses and measuring 8 feet in width, 12 feet in height and 4 feet long at the base. Filters were installed behind the air intakes and snow collected and ran off the roof harmlessly.

The State then brought this action against the appellant and the mechanical engineer for negligence and breach of contract. Prior to trial, settlement was reached with the engineer and that portion of the case was dismissed. The State proceeded to trial on the negligence claim against the architect for the cost of building the eight snow chambers, $53,246; the cost of the expert's report to determine the cause of the snow ingestion problem, $4,385; and the appearance damage to the veterinary medicine complex from having the snow chambers extend onto the roof of the pathology building, $20,000.

At trial, the State's witnesses testified the architect was aware of the use of the ceiling plenum for air intake, and of the location of the air intakes. It incorporated the intakes into the overall building plan and should have known snow would be drawn in through the louvers. The witnesses also testified appellant specified a variety of building materials which were not water resistant to be included in the plenum, thus permitting the melted snow to cause substantial damage in the ceiling plenum and allowing it to leak through the ceiling.

The appellant defends claiming the louvers were not constructed pursuant to its design, thereby relieving it of responsibility for the damage since the State retained the duty of inspection and supervision of the contract.

The State's expert testified the amount of free air space allowed by the louvers was irrelevant to the ingestion of snow. The State's evidence also showed the one louver which did have the correct free air space ingested as much snow as the other louvers.

The jury returned a verdict for the State for $57,632 with comparative fault as follows: one-third to the State; one-third to the consulting engineers; and one-third to the appellant. No fault was assessed to the contractor.

Following the entry of judgment, appellant filed a motion for judgment notwithstanding the verdict and for new trial. both motions were denied. The architect appeals.

Appellant first argues the failure of the contractor to build the louvers in compliance with the plans and specifications prepared by the mechanical engineers relieves the appellant of any liability. In support, appellant cites several cases which consistently hold that a contractor's failure to comply with the architect's plans, which failure resulted in a negligent design causing injury, eliminates any liability on the part of the architect. See *Wheat St. Two v. James C. Wise,* 132 Ga. App. 548, 208 S.E.2d 359 (1974); *Bayne v. Everham,* 197 Mich. 181, 163 N.W. 1002 (1917); and *Lake v. McElfatrick et al.,* 139 N.Y. 349, 34 N.E. 922 (1893). These cases are all easily distinguishable from the instant case. In each of the cases cited by appellant, the deviation from the architect's design was found to be the proximate cause of the injury or damage. In the instant case there is evidence the contractor's failure to comply with the 40% louver specification was not material to the snow ingestion problem.

At trial, appellant's expert witness, Robert Miller, P.E., testified that the deviation in the louver as constructed compared to how it was designed caused the snow ingestion problem. Appellee's expert witness, Myron Reed, P.E., testified the deviation had no effect on the snow problem. Also in evidence was the one louver built according to the design with 40% free air space which also ingested a large quantity of snow; the Black and Veatch report which found the snow chambers would have been necessary even with a 40% louver; and evidence the 20% louvers were being used successfully after the implementation of the snow chambers. Evidence was also presented by appellee which challenged the credibility of appellant's expert witness. We have held when a verdict is attacked on the ground it is contrary to the evidence, as appellant argues here, it is not the function of an appellate court to weigh the evidence or pass judgment on the credibility of witnesses. If the evidence with all reasonable inferences to be drawn therefrom, when considered in a light most favorable to the successful party below, will support the verdict, this court will not intervene. See *Timsah v. General Motors Corp.,* 225 Kan. 305, Syl. ¶ 1, 591 P.2d 154 (1979).

The record shows substantial competent evidence to support

the verdict that the deviation from the architect's plan was not the cause of the snow ingestion. Hence, the deviation does not relieve the architect of responsibility for its design defect.

The appellant next argues it was relieved from liability for any design defects because the contract between the parties stated the State had the obligation to accept and approve all plans and construction, and the State accepted construction of louvers which did not conform to appellant's design. Appellant further argues it did not violate the contract since it fulfilled its duty to prepare the design.

The fallacy in this argument is similar to that in the first issue. There is evidence the nonconforming louvers were not the cause of the snow ingestion. Thus, the State's acceptance of the louvers as constructed did not relieve appellant of its duty to design a building safe from snow intake. Further, it was not the duty of appellant merely to design a building, but to do so pursuant to the standard of care to which an architect is held. This standard has been described as follows:

"An architect will also be held liable for damage sustained by his employer where, by reason of the architect's breach of his duty to exercise care and skill, his plans and specifications were faulty and defective  . . . ." 5 Am. Jur. 2d, Architects § 23, p. 686.

Appellant next argues the failure of the jury to assess any percentage of fault to the contractor was contrary to the evidence. The standard for reviewing verdicts which are alleged to be contrary to the evidence was previously stated. This court's duty is to determine if the evidence with all reasonable inferences to be drawn therefrom, considered in the light most favorable to the successful party below, will support the verdict. See *Timsah v. General Motors Corp.*, 225 Kan. 305, Syl. ¶ 1.

Appellant cites previous cases by this court in which we have held verdicts contrary to the evidence are reversible on appeal. See *In re Estate of Winters*, 192 Kan. 518, 389 P.2d 818 (1964); and *Lorbeer v. Weatherby,* 190 Kan. 576, 376 P.2d 926 (1962). The verdict in the case at bar is not contrary to the evidence. As indicated earlier there was substantial credible evidence presented at trial upon which the jury could conclude the contractor was not liable since the snow ingesting defect was not from the contractor's failure to conform to the design, but was due instead to a defect in the architect's design.

Appellant next contends the court's instruction as to appellee's claim for loss of aesthetic value was in error since no evidence was introduced as to the value of the loss.

The court instructed the jury it could take into consideration damage to the aesthetic appearance of the veterinary medicine complex by the addition of the snow chambers. The appellant argues the State introduced no evidence of the amount sought for the loss of aesthetic value. Appellee argues this issue is moot since the jury made no award for loss of aesthetic value.

The record shows the jury requested a breakdown of the damages sought by the State. The response from the court was:

"The items of damage claimed are:

| | | |
|---|---|---|
| 1. | Cost of repair of intake design | $53,246 |
| 2. | The expenses in connection with determining the nature of the air intake problem | $ 4,385 |
| 3. | Damages to the appearance of the veterinary medicine complex | $20,000 |
| | Total | $77,631" |

The jury returned a general verdict assessing the total damages at $57,632, one dollar higher than the total of the cost of the repairs with the cost of determining the nature of the problem. We conclude the jury made an award for loss in aesthetic value in the amount of $1.

We previously held: "In order for the evidence to be sufficient to warrant recovery of damages there must be some reasonable basis for computation which will enable the jury to arrive at an approximate estimate thereof." *Venable v. Import Volkswagen, Inc.*, 214 Kan. 43, 50, 519 P.2d 667 (1974).

The State argues recovery for the repair work alone does not fully compensate the State since it does not fully restore the building to the condition it would have been in but for the negligent design. See Restatement (Second) of Torts § 903, comment A (1982). The State presented evidence at trial that it was important for each building in the veterinary medicine complex to be uniform in appearance and the need for the addition of the snow chambers affected this aesthetic goal.

The State argues it should be relieved from introducing evidence of actual dollar loss since the case involves a public building. Public buildings are more difficult to value since the traditional buyer-seller standards of appraisal do not apply to

them. In *Kennedy v. Heat and Power Co.*, 103 Kan. 651, 653, 175 Pac. 977 (1918), we held:

"It is frequently said that the market value of the property described at the time and place of fire is a proper measure, and this is true if the property in fact has a market value. If there be no market value, then another criterion of value must be found, and the best evidence which can be obtained must be produced to show the elements which enter into the real value."

Thus, even though a public building may be hard to appraise, a party is not relieved from the duty of providing the jury some basis for determining damage. The record reveals no evidence of the value of the loss for damaged appearance of the building which was introduced by the State. This is a failure to prove one element of damages and, hence, an instruction allowing the jury to award such damages is error. We have held a trial court must only instruct a jury on the law applicable to the theories of the case where there is evidence to support them. See *State v. Haynes,* 5 Kan. App. 2d 144; Syl. ¶ 2, 612 P.2d 1268, *rev. denied* 228 Kan. 807 (1980). Since there was no evidence to support the instruction, it should not have been given and is error. However, in light of the jury's award of only $1, we find the error harmless.

Appellant's final argument is the jury award for the cost of construction of the ventilation system is a windfall and not within the realm of compensatory damages. Kansas has recognized that "[t]he basic principle of damages is to make a party whole by putting it back in the same position, not to grant a windfall." *Service Iron Foundry, Inc. v. M. A. Bell Co.*, 2 Kan. App. 2d 662, 679, 588 P.2d 463 (1978).

Appellant argues if the snow chambers had been included in the original plans the State would have paid the same additional amount as it paid having them installed after the building was constructed. Appellee defends by noting the chambers would not have been accepted in the original design and were only accepted later because other methods were considered to be impossible given the existence of the building. The evidence was, therefore, controverted. The jury, however, chose to believe the appellee. There is substantial competent evidence to support the verdict. Appellant's argument is without merit.

The judgment of the trial court is affirmed.