Present: All the Justices

DONALD W. RADVANY

v. Record No. 002499     OPINION BY JUSTICE ELIZABETH B. LACY
                                     September 14, 2001
JEAN T. DAVIS

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Michael C. Allen, Judge

Donald W. Radvany seeks reversal of a trial court judgment entered on a jury verdict awarding Jean T. Davis $65,000 in damages for injuries she suffered as a result of Radvany's negligence. For the following reasons, we conclude that the trial court did not err in refusing to allow the introduction into evidence of the payment accepted by health care providers for the medical services rendered to Davis and did not err in instructing the jury on the aggravation of a preexisting condition.

I. Medical Bills

Davis' medical bills showed that the health care providers billed her $19,219.64 for the medical services rendered to her. The bills also showed the amount accepted by the health care providers as payment in full, $7,819.99. The trial court held that, "under the Supreme Court decision of Acuar v. Letournea[u] [260 Va. 180, 531 S.E.2d 316 (2000)] and other authorities," Radvany could not introduce into evidence the amounts paid by Davis' medical insurance carrier and

accepted by the health care providers as payment in full for the medical services rendered to Davis.

Radvany asserts that this ruling is erroneous because Acuar only addressed whether amounts "written off" by health care providers could be claimed as damages and did not rule on whether the amounts accepted by health care providers as payment in full for medical care rendered were evidence of the reasonable value of the services. We disagree.

In Acuar, applying the collateral source rule, we held that a tortfeasor may not deduct from the full compensation owed an injured party any part of the benefits the injured party received from his contractual arrangement with his health insurance carrier. Those benefits included not only the amounts written off by the health care provider but also the actual payments made by the health insurance carrier.

> Those amounts written off are as much of a benefit for which Letourneau paid consideration as are the actual cash payments made by his health insurance carrier to the health care providers.

260 Va. at 192, 531 S.E.2d at 322. Payments made to a medical provider by an insurance carrier on behalf of an insured and amounts accepted by medical providers are one and the same. Regardless of the label used, they are payments made by a collateral source and, thus, are not admissible in evidence for that reason.

2

Furthermore, such amounts are not evidence of whether the medical bills are "reasonable, i.e., not excessive in amount, considering the prevailing cost of such services." McMunn v. Tatum, 237 Va. 558, 568, 379 S.E.2d 908, 913 (1989). The amounts accepted by Davis' health care providers represent amounts agreed upon pursuant to contractual negotiations undertaken in conjunction with Davis' health insurance policy. Such negotiated amounts, presumably inuring to the benefit of the medical providers, the insurance carrier, and Davis, do not reflect the "prevailing cost" of those services to other patients.

Accordingly, the trial court did not err in ruling that Radvany could not introduce into evidence the amounts accepted by the medical service providers as payment in full for the medical services rendered Davis.

## II. Aggravation of a Preexisting Condition

Radvany also claims that there was no evidence to support a jury instruction on the aggravation of a preexisting condition and that the trial court erred in giving that instruction. Again, we disagree with Radvany.

Davis testified that she experienced pain in her right shoulder approximately three months after the accident and that she did not recall having any pain or problems with her shoulder prior to that time. Her treating physician, Dr. Mark E. deBlois, testified that Davis' rotator cuff was injured,

that the accident caused the tear in Davis' rotator cuff, and that the injury required surgery. Dr. deBlois also testified that Davis had a bone spur on her shoulder joint, which he described as a calcium growth associated with degenerative changes in the shoulder joint.

Radvany's expert witness, Dr. John Meyers, disagreed, asserting that the injury was the result of degenerative changes that would have occurred regardless of the accident. Meyers also testified that 75% of people Davis' age have rotator cuff tears and that many of such conditions are asymptomatic. In response to a question by Davis' counsel, Meyers stated that the tear in Davis' rotator cuff "may have" developed prior to the accident.

Both experts testified that Davis had a condition which could have pre-dated the accident, a degenerative shoulder joint and a rotator cuff tear. Dr. Meyers' testimony supported the inference that the torn rotator cuff could have been asymptomatic prior to the accident. Davis testified she had no shoulder pain until after the accident. This evidence was "more than a scintilla" and thus was sufficient to support a jury instruction on the aggravation of a preexisting condition. Rosen v. Greifenberger, 257 Va. 373, 380, 513 S.E.2d 861, 865 (1999).

For these reasons, we will affirm the judgment of the trial court.

4