No. 88,434

ALDENA J. ROSE, Individually and as Surviving Spouse of Lyle Rose, Deceased, and MARILYN A. CORR, as Executor of the Estate of Lyle Rose, Deceased, *Appellants/Cross-appellees*, v. VIA CHRISTI HEALTH SYSTEM, INC./ST. FRANCIS CAMPUS, *Appellee/Cross-appellant.*

(78 P.3d 798)

540

Opinion filed October 31, 2003.

*Thomas M. Warner, Jr.*, of Warner Law Offices, P.A., of Wichita, argued the cause and was on the briefs for appellants/cross-appellees.

*Don D. Gribble, II*, of Hite, Fanning & Honeyman, L.L.P., of Wichita, argued the cause, and *Vince P. Wheeler*, of the same firm, was with him on the briefs for appellee/cross-appellant.

*Wayne T. Stratton* and *Anne M. Kindling*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, were on the brief for *amicus curiae* Kansas Hospital Association.

*James R. Howell, Kyle J. Steadman*, and *Douglas D. Pletcher*, of Bradshaw Johnson & Hund, of Wichita, were on the brief for *amicus curiae* Kansas Trial Lawyers Association.

The opinion of the court was delivered by

GERNON, J.: Aldena M. Rose and Marilyn A. Corr, executor of the Estate of Lyle Rose, Deceased, (hereinafter jointly referred to as Rose) appeal the trial court's order allowing Via Christi Health System, Inc., (Via Christi) to offset its share of the judgment against medical expenses that were written off pursuant to a Medicare payment. Via Christi cross-appeals the trial court's admission of evidence regarding medical expenses.

Lyle Rose was admitted to Via Christi's St. Francis campus for a coronary arteriogram. Later that night, Lyle fell out of the bed and hit his head, causing two lacerations to the back of his head. A few hours later, Lyle developed a subdural hematoma, which caused him to collapse. He received medical treatment for his head

injury in Via Christi's intensive care unit for over 1 month. However, before the coronary arteriogram could be performed, Lyle died as a result of the subdural hematoma and other complications caused by his fall.

Rather than provide Lyle's treatment for the complications resulting from his fall gratuitously, Via Christi elected to bill Lyle and his insurer, Medicare, for the full cost of Lyle's treatment. Medicare fully paid for Lyle's medical expenses in accordance with its payment contract with Via Christi, which required Via Christi to write off $154,193.24 of the $242,104.84 that it billed.

Rose sued Via Christi for negligence. Prior to trial, Via Christi filed a motion in limine seeking to limit evidence of medical expenses to the amount actually paid by Medicare. The trial court denied Via Christi's motion, finding that the collateral source rule applied.

A jury found Via Christi to be 36 percent at fault and awarded total damages of $582,186.01, including $261,422.46 in medical expenses. Via Christi's portion of the judgment totaled $209,586.96.

Thereafter, Via Christi filed a motion to offset the $209,586.96 judgment by the medical expenses it wrote off. Following a hearing, the court granted Via Christi's motion, allowing Via Christi to offset the award by $94,112.09, its pro rata share of the medical expense damage award. This appeal followed, and the matter was transferred to this court pursuant to K.S.A. 20-3018(c).

Rose raises three arguments in support of her claim that the trial court erred when it granted Via Christi's motion to offset the judgment. First, Rose argues that the district court's decision has no legal support. Second, Rose argues that the decision abrogates Medicare's right of subrogation. Third, Rose argues that the offset violates federal law.

Rose and Via Christi agree that the issue raises a question of law requiring the application of a de novo standard of review. Neither party, however, has cited any authority to support this standard of review, and both parties are wrong. A decision to offset a damage award is within the trial court's discretion. When reviewing such a decision, an appellate court must determine whether the trial court

abused its discretion. *Mynatt v. Collis*, 274 Kan. 850, Syl. ¶ 1, 57 P.3d 513 (2002); *Carson v. Chevron Chemical Co.*, 6 Kan. App. 2d 776, 793, 635 P.2d 1248 (1981). " 'An abuse of discretion occurs where the district court clearly erred or ventured beyond the limits of permissible choice under the circumstances.' " *Unwitting Victim v. C.S.*, 273 Kan. 937, 944, 47 P.3d 392 (2002) (quoting *Wright ex rel. Trust Co. of Kansas v. Abbott Labs.*, 259 F.3d 1226, 1233 [10th Cir. 2001]).

Rose first argues that the trial court erred because there is no law to support its decision. Rose correctly notes the trial court's failure to cite to any authority. However, such a failure does not make a decision reversible. Rose fails to point to any authority that contradicts the trial court's decision. In fact, Rose's argument cites no legal authority whatsoever. Issues raised by an appellant with no supporting authority are not addressed by appellate courts. *Enlow v. Sears, Roebuck & Co.*, 249 Kan. 732, 744, 822 P.2d 617 (1991).

For her second argument, Rose claims that the trial court's decision is wrong because it abrogates Medicare's right to subrogation. This argument is also without merit. Rose fails to explain how the court's order abrogates Medicare's rights when nothing in the district court's decision addresses Medicare's right to subrogation. The reduction of Rose's judgment only affects the amount available for Medicare's subrogation claim, it does not abrogate Medicare's right of subrogation.

For her final argument, Rose contends that the trial court's decision violates federal law. Rose relies on 42 U.S.C. § 1395cc(a)(1)(A)(i) (2000), which makes payment eligibility under Medicare dependent on a medical provider's agreement not to charge any individual for items or services for which he or she is entitled to have payment made from Medicare. Via Christi fails to address this issue other than in a footnote that summarily dismisses it without any argument or citation to authority.

The Supremacy Clause of the United States Constitution provides that federal law is the supreme law of the land. U.S. Const. art. VI, cl. 2. State laws that conflict with federal laws are without effect. *Jenkins v. Amchem Products, Inc.*, 256 Kan. 602, 607, 886

P.2d 869 (1994). The same rule applies to state common law. 256 Kan. at 616-17 (holding that common-law actions based on inadequate labeling or failure to warn are preempted by FIFRA).

42 U.S.C. § 1395cc(a)(1)(A)(i) provides in pertinent part:

"Any provider of services . . . shall be qualified to participate under this subchapter and shall be eligible for payments under this subchapter if it files with the Secretary an agreement—not to charge, except as provided in paragraph (2), any individual or any other person for items or services for which such individual is entitled to have payment made under this subchapter . . . ."

If a provider violates the agreement not to charge patients, the Secretary of Health and Human Services may terminate or refuse to renew the provider's Medicare contract. 42 U.S.C. § 1395cc(b).

In *Holle v. Moline Public Hosp.*, 598 F. Supp. 1017, 1021 (C.D. Ill. 1984), the court applied 42 U.S.C. § 1395cc(a)(1)(A) to void a hospital's lien, holding that the hospital was bound by its agreement with Medicare not to charge any other person for the items or services for which a person is entitled to Medicare payment. In *Holle*, the plaintiff was injured in an automobile accident and settled with the tortfeasor's insurance company. Subsequently, the plaintiff filed an action to establish the amounts that he had to pay from the settlement for medical service provider's liens. Medicare paid the hospital in full for the plaintiff's Medicare-covered expenses, but the hospital filed a lien seeking payment for the amount written off after the Medicare payment. The *Holle* court stated that if the hospital were allowed to enforce its lien, it "would violate 42 U.S.C. § 1395cc(a)(1)(A) and the duties it assumed by contract and would flaunt Medicare regulation and public policy aimed at protecting beneficiaries of the Medicare program." 598 F. Supp. at 1021.

We agree with the *Holle* court and conclude that the Medicare statute prohibits health care providers from charging Medicare-qualified patients for items or services that are covered by Medicare. With the exception of the items specified in 42 U.S.C. § 1395cc(a)(2) that may apply to Mr. Rose's hospitalization, 42 U.S.C. § 1395cc(a)(1)(A)(i) is in direct conflict with the trial court's decision granting Via Christi's motion to offset the written-off medical expenses. We conclude that the Medicare statute preempts the

trial court's ruling. See *Jenkins*, 256 Kan. at 611. Thus, the trial court ventured beyond the limits of permissible choice and abused its discretion. See *Unwitting Victim*, 273 Kan. at 944. As a result, we reverse the district court's order granting Via Christi a general offset against the written-off medical expenses.

### Cross-Appeal

In the event we reversed the trial court's decision regarding Via Christi's motion to offset, Via Christi cross-appealed, arguing that the trial court should have limited the evidence of medical expenses to those amounts actually paid, without including the amounts it wrote off. The admission or exclusion of evidence lies within the sound discretion of the trial court. Subject to exclusionary rules, a trial court's decision is reviewed using an abuse of discretion standard. *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999).

The trial court denied Via Christi's motion to limit the admission of the evidence under the common-law collateral source rule which provides that " 'benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer.' " *Farley v. Engelken*, 241 Kan. 663, 666, 740 P.2d 1058 (1987).

The purpose for the collateral source rule is to prevent the tortfeasor from escaping from the full liability resulting from his or her actions by requiring the tortfeasor to compensate the injured party for all of the harm he or she causes, not just the injured party's net loss. *Bates v. Hogg*, 22 Kan. App. 2d 702, 709, 921 P.2d 249, *rev. denied* 260 Kan. 991 (1996) (dissenting opinion citing 2 Minzer, Nates, Kimball, Axelrod, and Goldstein, Damages in Tort Actions § 9.60, p. 9-88 [1991]); Restatement (Second) Torts § 920A, comment b (1977). A benefit secured by the injured party either through insurance contracts, advantageous employment arrangements, or gratuity from family or friends should not benefit the tortfeasor by reducing his or her liability for damages. If there is to be a windfall, it should benefit the injured party rather than the tortfeasor. *Bates*, 22 Kan. App. 2d at 709.

Via Christi relies on *Bates* to support its proposition. In *Bates*, the plaintiff was injured in a car accident. The plaintiff's medical bills were paid by Medicaid. At trial, the court prohibited the plaintiff from presenting evidence of the full value of her medical treatment and limited the evidence to the actual amounts paid by Medicaid. The majority of the panel for the Court of Appeals determined that the collateral source rule did not apply under the circumstances. Noting that the medical provider could not charge Medicaid patients for the difference between their customary charge and the amount paid by Medicaid, the *Bates* court held that the amount paid by Medicaid becomes the customary charge. 22 Kan. App. 2d at 705. The *Bates* court limited the holding to the facts of the case, specifically noting that " '[i]t would be unconscionable to permit the taxpayers to bear the expense of providing free medical care to a person and then allow that person to recover damages for medical services from a tortfeasor and pocket the windfall.' " 22 Kan. App. 2d at 706 (quoting *Gordon v. Forsyth County Hospital Authority, Inc.*, 409 F. Supp. 708, 719 [M.D. N.C. 1976]).

Rose, on the other hand, urges us to limit the application of the *Bates* holding to Medicaid cases, pointing to the fact that Medicare benefits are purchased by payroll deductions and Medicaid benefits are free to all who qualify.

Pursuant to 42 U.S.C. § 1395i(a) (2000), the Medicare trust is funded by deductions from wages. Medicaid, on the other hand, is funded by payments from the federal government and contributions from state government. See 42 U.S.C. § 1396a(a)(2) (2000); U.S.C. § 1396b (2000). With the exception of charging a nominal fee to certain individuals who meet limited qualifications, a Medicaid plan cannot generally charge an enrollment fee, premium, or deductible. 42 U.S.C. § 1396o (2000).

In *Hodge v. Middletown Hosp. Assn.*, 62 Ohio St. 3d 236, 240, 581 N.E.2d 529 (1991), the Ohio Supreme Court held that Medicare benefits are insurance paid for by the employee and the employer for the benefit of the employee even though participation is involuntary. The *Hodge* court specifically distinguished Medicare benefits from Medicaid benefits based on the participant's pay-

ment of premiums for Medicare and the lack of contribution to Medicaid. 62 Ohio St. 3d at 240. We agree.

In *Manko v. United States*, 830 F.2d 831, 836 (8th Cir. 1987), the United States, as the defendant in a personal injury action, argued that amounts paid by Medicare should be offset against the plaintiff's damage award because they were not from a wholly independent source. The court held that the collateral source rule applies to amounts paid by Medicare because the plaintiff had contributed to Medicare, and, thus contracted for his recovery from Medicare. 830 F.2d at 837. Relying heavily on the plaintiff's contributions to Medicare, the *Manko* court distinguished *Overton v. United States*, 619 F.2d 1299 (8th Cir. 1980), which denied application of the collateral source rule in a similar situation because the Medicare beneficiary was over 65 years old before the Medicare law took effect and had not contributed to Medicare.

Based upon the payment of premiums by Medicare participants, we find that Medicare is akin to private insurance and can be distinguished from Medicaid in that regard. Accordingly, we hold that the *Bates* decision is limited to cases involving Medicaid.

Via Christi also relies on *Jackson v. City of Kansas City*, 263 Kan. 143, 947 P.2d 31 (1997), for the proposition that a plaintiff's recovery should be limited to the amount actually paid. *Jackson*, however, does not support this contention. In *Jackson*, the defendant sought to have the damage award for medical expenses reduced to the amount that had actually been paid by the plaintiff and a charity on his behalf. Finding no evidence to support the defendant's request for remittitur, the *Jackson* court refused to reduce the plaintiff's damage award. 263 Kan. at 151-52. However, the *Jackson* court did not address the application of the collateral source rule, so it is inapposite to the issue in this case.

With no other Kansas cases to help decide this issue of first impression, we turn to other jurisdictions to see how they have resolved it. Few jurisdictions have addressed the issue of whether the collateral source rule applies to Medicare write-offs. Three jurisdictions that have addressed the issue have determined that the collateral source rule applies. See *Candler Hosp. v. Dent*, 228 Ga. App. 421, 491 S.E.2d 868 (1997); *Wal-Mart Stores, Inc. v. Frier-*

*son*, 818 So. 2d 1135, 1140 (Miss. 2002); *Brown v. Van Noy*, 879 S.W.2d 667 (Mo. App. 1994).

The *Candler Hosp.* case is directly on point with the facts in this case. A decedent's spouse and estate sued Candler Hospital, Inc., for wrongful death. The decedent's medical expenses were paid by Medicare, with a substantial portion of the expenses being written off by the hospital. The hospital filed a motion in limine to exclude the written-off expenses, but the trial court denied the motion, finding that the collateral source rule applied. On an interlocutory appeal, the Georgia Court of Appeals affirmed the trial court but held that the hospital would be entitled to a set-off for the amounts written off against a special damage award for medical expenses. As demonstrated by the analysis of the appellant's issue here, the Georgia Court of Appeals incorrectly determined that the hospital is entitled to a set-off because such a set-off violates federal law. Nevertheless, the *Candler Hosp.* court did not make the application of the collateral source rule dependent on the hospital's entitlement to a set-off. The *Candler Hosp.* court specifically stated that the hospital would not be entitled to a set-off of general damages. 228 Ga. App. at 422.

The *Brown* court focused on the plaintiff's contributions to Medicare and found that expenses paid by Medicare are not materially different than expenses paid by insurance with part of the expenses being written off pursuant to a contract. 879 S.W.2d at 676. Likewise, the Mississippi Supreme Court found no reason to distinguish between private insurance and Medicare or Medicaid when it concluded that the collateral source rule applies to the written-off portion of the plaintiff's medical bills. *Wal-Mart Stores, Inc.*, 818 So. 2d at 1140 (relying on *Brandon HMA, Inc. v. Bradshaw*, 809 So. 2d 611, 618 [Miss. 2001], which applied the collateral source rule to Medicaid write-offs).

Via Christi relies on *Mitchell v. Hayes*, 72 F. Supp. 2d 635 (W.D. Va. 1999), *Hanif v. Housing Authority*, 200 Cal. App. 3d 635, 246 Cal. Rptr. 192 (1988), and *Moorhead v. Crozer Chester Med. Center*, 564 Pa. 156, 765 A.2d 786 (2001), for its proposition that plaintiffs are not entitled to damages for amounts that are written off

by health care providers. However, its reliance on these cases is misplaced.

*Mitchell* is no longer good law. In *Mitchell*, the court held that the collateral source rule does not apply to medical bills that were written off pursuant to private health care agreements. 72 F. Supp. 2d at 636. Applying Virginia substantive law, the federal district court predicted that the Virginia Supreme Court would not apply the collateral source rule because the plaintiff had not incurred the written-off expenses. 72 F. Supp. 2d at 637. Subsequently, the Virginia Supreme Court determined the question oppositely from the *Mitchell* court's prediction. In *Acuar v. Letourneau*, 260 Va. 180, 192, 531 S.E.2d 316 (2000), the Virginia Supreme Court held that the tortfeasor could not benefit from write-offs that resulted from contractual arrangements between the injured party's private health care insurers and the health care providers. Noting the injured party's payment of premiums for the insurance, the *Acuar* court found the write-offs to be as much of a bargained-for benefit to the injured party as the actual cash payments made by the health insurance carrier. 260 Va. at 192.

*Hanif* can be distinguished both legally and factually from this case. In *Hanif*, the California Court of Appeals held that the reasonable value of medical expenses is limited to the amount incurred by the plaintiff or on the plaintiff's behalf. 200 Cal. App. 3d at 640. Kansas law, however, does not limit recovery to the amounts paid for medical services. Instead, Kansas values damages based on the reasonable expense of treatment, which permits recovery for gratuitous services. *Shirley v. Smith*, 261 Kan. 685, 693-94, 933 P.2d 651 (1997) (allowing plaintiff to recover damages for self-catheterization treatment). *Hanif* is also distinguishable because it applies to payments made by Medi-Cal, which is the equivalent of Medicaid in Kansas. We have previously distinguished Medicaid and Medicare based on the recipient's payroll contribution to Medicare.

Although the *Moorhead* case cited by Via Christi is more factually on point with this case, it fails to distinguish between Medicare and Medicaid as we have here. In *Moorhead*, a decedent's estate sued a hospital for wrongful death. The decedent's hospital

bills were paid by Medicare with certain portions being written off pursuant to the hospital's contractual adjustment with Medicare. The hospital sought to limit the plaintiffs' recovery to the amounts actually paid by Medicare. Relying on *Bates* and *Hanif*, the Pennsylvania Supreme Court held that the plaintiff could not recover the amounts written off by the hospital because she did not incur the expenses and such payment would provide the plaintiff with a windfall in violation of the fundamental tenets of just compensation. 564 Pa. at 162-63.

One justice on the Pennsylvania Supreme Court dissented in *Moorhead*, stating:

"[T]he majority carves out a broad exception to the established rule of law in this Commonwealth that personal injury plaintiffs are allowed to recover the reasonable value of the medical services made necessary by the wrongdoer's tortious conduct. Contrary to the majority's holding, it is the *value*, and not the ultimate cost, of medical services made necessary by the tortfeasor's negligence that determines the proper measure of compensatory damages for past medical expenses." 564 Pa. at 169.

Although not cited by Via Christi, two Louisiana cases support its position. The first case is *Williamson v. St. Francis Medical Center, Inc.*, 559 So. 2d 929 (La. App. 1990), from the Second Circuit of the Louisiana Court of Appeals. In *Williamson*, the plaintiff was injured by a nurse while in the hospital. In a lawsuit against the hospital, the plaintiff sought damages for the amounts written off after Medicare paid the hospital's expenses. The *Williamson* court held that the benefits from the Medicare write-off resulted from the hospital's contribution and denied recovery of the written-off amounts. 559 So. 2d at 934.

The second case is *Suhor v. Lagasse*, 770 So. 2d 422 (La. App. 2000), from the Fourth Circuit of the Louisiana Court of Appeals. The *Suhor* court determined that a personal injury victim was not entitled to recover for the medical expenses that were written off pursuant to a Medicare payment because no one was financially obligated to pay the written-off amounts. 770 So. 2d at 427. The court determined that the injured party was not required to reduce her patrimony to receive the benefit of the write-offs, which are

required by operation of law, and should not recover from a non-existent debt. 770 So. 2d at 427.

Louisiana appellate courts have not consistently addressed whether the collateral source rule applies to medical expense write-offs. The First Circuit Court of Appeals held that the collateral source rule applies to amounts written off due to payments by private insurers. *Griffin v. Louisiana Sheriff's Auto Risk*, 802 So. 2d 691, 714-15 (La. App. 2001). The *Griffin* court distinguished private insurance from Medicare and Medicaid based on the application of federal law to Medicare and Medicaid cases. *Griffin*, 802 So. 2d at 714. The Second Circuit Court of Appeals held that the collateral source rule does not allow recovery of Medicaid write-offs. *Terrell v. Nanda*, 759 So. 2d 1026, 1030 (La. App. 2000). The Third Circuit Court of Appeals applied the collateral source rule to amounts written off due to the plaintiff's Medicaid eligibility. *Brannon v. Shelter Mut. Ins. Co.*, 520 So. 2d 984, 986 (La. App. 1987). The *Terrell* court distinguished the *Brannon* decision by noting that the plaintiff's medical expenses in *Brannon* were paid by a private insurer rather than Medicaid. *Terrell*, 759 So. 2d at 1029.

Like the California courts, the Louisiana courts measure medical damages by the amount incurred as a result of the injury rather than the reasonable value of treatment. See *Hanif*, 200 Cal. App. 3d at 640; *Suhor*, 770 So. 2d at 426-27; *Terrell*, 759 So. 2d at 1030-31. We have distinguished *Hanif* from Kansas law on this basis and can distinguish the Louisiana cases in the same manner.

Although they did not address the application of the collateral source rule specifically to Medicare write-offs, other courts have applied the rule to amounts written off as a result of contracts between health care providers and private insurers. See *Hardi v. Mezzanotte*, 818 A.2d 974 (D.C. 2003); *Olariu v. Marrero*, 248 Ga. App. 824, 549 S.E.2d 121 (2001); *Radvany v. Davis*, 262 Va. 308, 310, 551 S.E.2d 347 (2001); *Acuar*, 260 Va. at 192; *Koffman v. Leichtfuss*, 246 Wis. 2d 31, 630 N.W.2d 201 (2001). The *Hardi* court relied on the *Acuar* court's contractual benefit analysis, holding that the injured party should be able to receive the benefit of his or her bargain with the insurance company. 818 A.2d at 984.

The *Olariu* and *Koffman* courts both relied on the public policy purposes of the collateral source rule, refusing to allow tortfeasors to benefit from any assistance provided by the injured parties' sources. *Olariu*, 248 Ga. App. at 826; *Koffman*, 246 Wis. 2d at 44-46. The *Koffman* court stated that "[a]pplying the collateral source rule to payments that have been reduced by contractual arrangements between insurers and health care providers assures that the liability of similarly situated defendants is not dependent on the relative fortuity of the manner in which each plaintiff's medical expenses are financed." 246 Wis. 2d at 49.

As previously stated, we distinguish Medicaid and Medicare cases based on the recipient's contribution for Medicare coverage and find Medicare to be akin to private insurance. Accordingly, we find the cases that apply the collateral source rule to amounts written off due to private insurance to be persuasive. Likewise, we are persuaded by the reasoning of the *Brown* and *Wal-Mart* courts which apply the collateral source rule to amounts written off pursuant to Medicare payments. Because health care providers voluntarily contract with Medicare in the same manner as they contract with other private insurers for reduced rates, the benefit of the write-offs should be attributed to the Medicare participant rather than the health care provider.

Public policy in Kansas supports the theory that any windfall from the injured party's collateral sources should benefit the injured party rather than the tortfeasor, who should bear the full liability of his or her tortious actions without regard to the injured parties' method of financing his or her medical treatment. Applying these concepts to this case, we hold that the trial court did not err when it applied the collateral source rule to the portion of the hospital's medical bills that was written off pursuant to Via Christi's contract with Medicare and affirm on this issue.

Issue raised in appeal reversed; issue raised in cross-appeal affirmed.

ABBOTT, J., not participating.

BRAZIL, S.J., assigned█

LUCKERT, J., dissenting: The majority holds that the collateral source rule applies to all benefits provided to the plaintiff by the tortfeasor, Via Christi. I would agree with the application of the collateral source rule to the $82,862.99 paid for by Medicare. However, I would find that the collateral source rule does not apply to the value of the medical care which Via Christi provided but for which it did not receive compensation from plaintiff, Medicare, or any other source. Application of the collateral source rule to this portion of the judgment is contrary to the basic precept of the collateral source rule which is that benefits received by the plaintiff from a source *wholly independent of and collateral to the wrongdoer* will not diminish the damages otherwise recoverable from the wrongdoer.

The cases cited by the majority in support of its conclusion arise in the prototypical situation of the medical provider being a third party, non-tortfeasor. In these cases the plaintiff is injured through the negligence or other wrongful act of a defendant and receives treatment for those injuries from a Medicare provider who is not a defendant. The bill for medical services is then paid by Medicare, and the provider writes off those amounts which Medicare does not reimburse, thus, providing a benefit to the plaintiff to which the wrongdoer did not contribute and which is, therefore, collateral to the tortfeasor. By definition, the collateral source rule applies in these situations.

In contrast, in this case the injury occurred while Rose was being treated at Via Christi. Care continued at Via Christi; thus, it was the tortfeasor which paid those costs not reimbursed by Medicare. Benefits conferred by the tortfeasor upon the plaintiff are not wholly independent of and collateral to the tortfeasor. In all of the cases from other jurisdictions cited by the majority or the parties in which the tortfeasor was the Medicare provider and the issue

was how to treat the amount not reimbursed by Medicare, the court concluded the defendant was entitled to a credit against the judgment for the medical expenses which the tortfeasor provided without reimbursement or the plaintiff was otherwise not entitled to that amount as damages.

The majority rejects these cases based upon an overly broad reading of 42 U.S.C. § 1395cc(a)(1)(A) (2000). The majority's interpretation is contrary to the plain language of the statute and legislative intent. Further, this interpretation violates basic tenets of the law of damages, requiring Via Christi to absorb the cost of the services for which there was no reimbursement and then, once again, pay for providing these services.

### Collateral Source Rule in Kansas

The collateral source rule in Kansas is usually stated as follows:

"At common law, the collateral source rule prevented the jury from hearing evidence of payments made to an injured person by a source *independent of the tortfeasor* as a result of the occurrence upon which the personal injury action is based. The court has stated the rule as follows: 'Under the "collateral source rule," benefits received by the plaintiff from a source *wholly independent of and collateral to the wrongdoer* will not diminish the damages otherwise recoverable from the wrongdoer.' *Farley v. Engelken,* 241 Kan. 663, Syl. ¶ 1, 740 P.2d 1058 (1987)." (Emphasis added.) *Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 1014, 850 P.2d 773 (1993).

See *Gregory v. Carey,* 246 Kan. 504, 508, 791 P.2d 1329 (1990); *Wentling v. Medical Anesthesia,* 237 Kan. 503, 515, 701 P.2d 939 (1985); *Allman v. Holleman,* 233 Kan. 781, Syl. ¶ 8, 667 P.2d 296 (1983); *Pape v. Kansas Power & Light Co.,* 231 Kan. 441, 446, 647 P.2d 320 (1982); *Southard v. Lira,* 212 Kan. 763, 768-69, 512 P.2d 409 (1973); *Rexroad v. Kansas Power & Light Co.*, 192 Kan. 343, 354, 388 P.2d 832 (1964).

In *Harrier v. Gendel,* 242 Kan. 798, 800, 751 P.2d 1038 (1988), the court indicated the collateral source rule as applied in Kansas was consistent with Restatement (Second) of Torts § 920A (1977). That section, specifically subparagraph (1), provides that when the tortfeasor contributes the services or pays damages the tortfeasor is entitled to a credit toward the payment of the damages:

"(1) A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.

"(2) Payment made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable."

Consistent with the rule stated in subparagraph (1) of this section, in *Hustead v. Bendix Corp.*, 233 Kan. 870, 877-78, 666 P.2d 1175 (1983), this court considered the effect of a partial payment of damages predicated upon possible tort liability. The court held that the advance or partial payment was not admissible into evidence under K.S.A. 40-275. The court continued, stating: "Such a payment constitutes a credit and may be deducted from any settlement or final judgment rendered."

### Cases From Other Jurisdictions

The majority does not discuss this rule and, in determining that the collateral source rule applies to the amount Via Christi wrote off, does not distinguish between cases where the Medicare provider is the tortfeasor and cases where the Medicare provider is a third party. The following cases cited by the majority involve a Medicare provider who was not a defendant. Therefore, these cases are distinguishable and do not address the limited issue raised in this case of how to treat the services provided to plaintiff by the defendant health-care provider. See *Holle v. Moline Public Hosp.*, 598 F. Supp. 1017, 1021 (C.D. Ill. 1984) (defendant was driver of automobile; hospital was third-party collateral source); *Olariu v. Marrero*, 248 Ga. App. 824, 549 S.E.2d 121 (2001) (defendant was vehicle driver; medical provider was third-party collateral source); *Wal-Mart Stores, Inc. v. Frierson*, 818 So. 2d 1135 (Miss. 2002) (defendant was store; medical provider was third-party collateral source); *Brown v. Van Noy*, 879 S.W.2d 667 (Mo. App. 1994) (defendant was pub; medical provider was third-party collateral source); *Radvany v. Davis*, 262 Va. 308, 310, 551 S.E.2d 347 (2001) (personal injury action; medical provider was third-party collateral source); *Acuar v. Letourneau*, 260 Va. 180, 192, 531 S.E.2d 316 (2000) (defendant was car driver; medical provider was third-party

collateral source); *Koffman v. Leichtfuss*, 246 Wis. 2d 31, 630 N.W.2d 201 (2001) (defendant was motorist; medical provider was third-party collateral source).

In two other cases cited by the majority, the issue addressed was whether the payment made by Medicare was a collateral source. *Manko v. United States*, 830 F.2d 831 (8th Cir. 1987); *Hodge v. Middletown Hosp. Assn.*, 62 Ohio St. 3d 236, 581 N.E.2d 529 (1991). Thus, these cases do not address the issue before us which is how to treat the expense paid for by the defendant not Medicare.

On the other hand, in all cases cited in the majority opinion where the tortfeasor was the Medicare provider the court has refused to apply the collateral source rule to the portion of the medical services not paid for by Medicare.

In *Moorhead v. Crozer Chester Med. Center*, 564 Pa. 156, 765 A.2d 786 (2001), the plaintiff filed a malpractice action after she suffered a fall at the hospital. Treatment was provided by the hospital and Medicare provided partial reimbursement. At issue was the amount not reimbursed by Medicare. As noted by the majority, the Pennsylvania Supreme Court held that the plaintiff could not recover the amounts paid. In part, its holding was based upon the determination that the plaintiff did not incur the expenses, stating: "Appellant never has, and never will, incur the $96,500.91 sum from Appellee as an expense. We discern no principled basis upon which to justify awarding that additional amount." 564 Pa. at 163. The majority distinguishes the case because of this holding.

But the Pennsylvania Supreme Court also stated as part of its rationale:

"Additionally, we find that the collateral source rule is inapplicable to the additional amount of $96,500.91. The rule 'provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer.' . . .

"Clearly, Appellant is entitled to recover $12,167.40, the amount which was paid on her behalf by Medicare and Blue Cross, the collateral sources. *See* Restatement (Second) of Torts § 920A(2) . . . . But the essential point to recognize is that Appellee is not seeking to diminish Appellant's recovery by this amount. Rather, the issue is whether Appellant is entitled to collect the additional amount of $96,500.91 as an expense. Appellant did not pay $96,500.91, nor did Medicare or Blue Cross pay that amount on her behalf. The collateral source rule does not

apply to the illusory 'charge' of $96,500.91 since that amount was not paid by any collateral source." 564 Pa. at 164-65.

The majority also notes the factually similar case of *Williamson v. St. Francis Medical Center*, 559 So. 2d 929 (La. App. 1990), and again dismisses it because there is a split between various circuits of the Louisiana Court of Appeals regarding whether the measure of damages is the amount incurred as a result of the injury or the amount billed representing the reasonable value of services. In *Williamson*, the trial court applied a rule, as would the majority in this case, that the plaintiff should receive damages in the full amount of the bill, not just as reimbursed. On appeal, the court did not reverse that conclusion, but decided the case on other grounds and stated:

"However, in the present case, the hospital, to whom the bill was owed, was also a tort-feasor. Thus, the benefit to the plaintiffs of the contractual adjustment results from the 'procuration or contribution' of the tort-feasor. As a result, we will not allow the plaintiffs to recover for the amount contractually adjusted, or cancelled, by the hospital tort-feasor." 559 So. 2d at 934.

Similarly, as the majority notes, the Georgia Court of Appeals in *Candler Hosp. v. Dent*, 228 Ga. App. 421, 491 S.E.2d 868 (1997), applied the collateral source rule to portions of the medical bills paid by Medicare, but allowed the hospital a credit for those amounts written off.

"[I]n the event that the plaintiff recovers a special verdict that awards damages for medical expenses previously written off by the defendant, the defendant is entitled to a set-off or credit against the specific award of medical expenses in the verdict prior to the entry of the judgment in the amount of any write-off that the defendant made to the total medical expenses. If the jury makes no award of medical expenses as damages or there is a general verdict, then it would not be ascertainable whether such special damages for medical expenses were awarded and the defendant would not be entitled to a set-off against a general verdict for damages.

"Georgia, as part of its common law and public policy, has always prohibited a plaintiff from a double recovery of damages; the plaintiff is entitled to only one recovery and satisfaction of damages, because such recovery and satisfaction is deemed to make the plaintiff whole. Where damages are special and ascertainable and the defendant or its privies, indemnitor, or insurers have paid the medical expenses prior to judgment, in whole or in part, a set-off against such special damages, specifically identified and awarded in the verdict, is mandated to prevent

a double recovery. [Citations omitted.] 'An injured person can have but one satisfaction for his injuries; and therefore the amount paid by the tortfeasor . . . will be regarded as a satisfaction pro tanto as to the joint tortfeasors.' [Citation omitted.] Thus, plaintiff can recover from the jury all special damages provable, but cannot receive in judgment again what has already been paid by the defendant or on the defendant's behalf by an insurer." 491 S.E.2d at 869-70.

The rationale of the Georgia court parallels Kansas common law regarding damages. An award of damages should make a party whole. See *State ex rel. Stephan v. Wolfenbarger & McCulley, P.A.*, 236 Kan. 183, Syl. ¶ 4, 690 P.2d 380 (1984). However, a plaintiff is not entitled to have the defendant or defendants pay twice for the damages. This court has cited to the summary of general rules in 25 C.J.S., Damages § 3, as follows:

" 'As a general rule, a person who has sustained loss or injury may receive no more than just compensation for the loss or injury sustained. He is not entitled to be made more than whole, and he may not recover from all sources an amount in excess of the damages sustained, or be put in a better condition than he would have been had the wrong not been committed . . . .

. . . .

" 'It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for the same injury simply because he has two legal theories . . . .' " *E.g., Ingram v. Howard-Needles-Tammen & Bergendoff*, 234 Kan. 289, 303, 672 P.2d 1083 (1983) (Schroeder, C.J., dissenting).

The decision of the majority violates these basic tenets of just compensation.

The majority cites *Manko v. United States*, 830 F.2d 831 as a similar case which reached the conclusion that the collateral source rule does apply. *Manko* dealt with the government's liability under the Swine Flu Act of 1976 which established a national program for immunization. As an incentive to stimulate manufacturing of the vaccine, the government, in essence, stepped into the shoes of the manufacturer for purposes of liability. When plaintiff sued, the government argued the collateral source rule did not apply because the government had contributed the Medicare funds. However, the court appropriately noted that the plaintiff had also contributed

to Medicare. Accord *Hodge*, 62 Ohio St. 3d at 240-41 (considering whether collateral sources rule applied to Medicare payments).

"The District Court rejected the claim, holding that, under Missouri law, the Medicare and social-security programs were collateral sources because Manko had made contributions to them, so the government should not receive a credit against its damages liability for those payments. *Id.* at 1450-51.

"We agree with the District Court." 830 F.2d at 836.

In this case, the same conclusion applies to the amount Medicare paid. See *Rexroad*, 192 Kan. at 354 ("damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partly indemnified for his loss by insurance effected by him, and to the procurement of which the wrongdoer did not contribute"). However, the holding in *Manko* has nothing to do with the issue before this court of how to deal with the amount of the write-off, an amount which Medicare did not pay.

The distinction was discussed recently by the District of Columbia Court of Appeals in *Hardi v. Mezzanotte*, 818 A.2d 974 (D.C. 2003). Discussing and distinguishing *Moorhead*, because in *Hardi* the Medicare provider was not the tortfeasor, the court stated:

"Since the [Pennsylvania Supreme Court in *Moorhead*] allowed plaintiff's damages for the amount actually paid to the medical facility, and the facility itself provided services in the greater amount, it is fair to say that the medical facility actually made plaintiff whole for the full amount of the claimed medical expenses. It was the tortfeasor's contract that accounted for this result, not the plaintiff's, as far as we can tell.

"It is worth noting again here that in this jurisdiction, the collateral source rule is applicable when payment comes from a source wholly independent of the tortfeasor or when *plaintiff* 'contract[s] for the prospect of double recovery.' [Citation omitted.] It does not appear that the facts in *Moorhead* would meet these tests." 818 A.2d at 985.

This conclusion is contrary to the analysis of the majority opinion in this case and brings into focus the primary distinction between the majority opinion and this dissent. The majority credits the contract between Rose and Medicare as being responsible for the requirement that Via Christi write off the $154,193.24. However, as the Pennsylvania Supreme Court and District of Columbia Court of Appeals note, this requirement arises because of the provider agreement between Medicare and Via Christi. In other words, the

quid pro quo for this agreement flows between Medicare and Via Christi, not between Medicare and Rose. As several courts have recognized, the guarantee of a prompt payment by Medicare is the "quid" for which the medical provider's agreement to accept reimbursement at Medicare's rate is the "quo." See *Rybicki v. Hartley*, 792 F.2d 260, 261-62 (1st Cir. 1986); *Mallo v. Public Health Trust of Dade County*, 88 F. Supp. 2d 1376, 1384 (S.D. Fla. 2000).

## 42 U.S.C. § 1395cc(a)(1)(A)(i)

The majority summarily dismisses these cases and their rationale upon the grounds that the holdings conflict with 42 U.S.C. § 1395cc(a)(1)(A)(i). The majority does so only through an overly broad reading of the statute. Contrary to the majority's analysis, neither Rose nor any other Medicare beneficiary, by paying Medicare taxes, contracts for the right to recover amounts paid through the Medicare program. Medicare asserts a lien against any judgment for amounts it has paid and, in several circumstances, allows liability carriers to do the same. Thus, this is not a circumstance where the plaintiff has paid for or contracted for the right to receive a double recovery.

The statute cited by the majority, the limiting charge provision, requires providers to accept the Medicare payment and agree "not to charge . . . any individual or any other person for items or services for which such individual is entitled to have payment made . . . ." 42 U.S.C. § 1395cc(a)(1)(A)(i). The provision applies to payments made by Medicare under subchapter 18 of the Social Security Act, which includes both primary and secondary payments. The Medicare program is structured upon a prospective payment system requiring that providers who agree to accept primary payment from Medicare be reimbursed on a flat fee basis determined by average cost and length of stay for various diagnostic related groups (DRG's). If a provider's actual cost falls below the DRG amount, it keeps the difference; if the provider's actual cost exceeds the DRG amount, the provider absorbs the loss. Under the secondary payer statutes, the costs are limited to costs that are reasonable and necessary or customary. See 42 U.S.C. § 1395f (2000).

By stating the provider may not "charge" the beneficiary with the unreimbursed amount, the limiting charge statute clearly constrains a provider's ability to treat the unreimbursed expenses as a debt of the beneficiary. Black's Law Dictionary 233 (6th ed. 1990) defines "charge" as "an encumbrance, lien, or claim" and "a liability." However, the statute does not specifically address situations where the provider seeks reimbursement in ways other than treating the amount as a debt of the beneficiary. See, *e.g.*, *Smith v. Farmers Ins. Exchange*, 9 P.3d 335, 341 (Colo. 2000) (health care provider entitled to reimbursement from primary insurance, including amounts required by Medicare to be "written off"); *Joiner v. Medical Center East, Inc.*, 709 So. 2d 1209, 1221 (Ala. 1998) (can assert lien against injured party's settlement where liability insurer was primary to Medicare).

In this regard, it is important to note that the Restatement (Second) of Torts § 920A(1) and our statements of the rule speak of the tortfeasor being allowed a "credit" rather than an "offset" for the damages paid. The distinction, though seemingly minor, is technically very important. "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913)." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 133 L. Ed. 2d 258, 116 S. Ct. 286 (1995). Compare that situation to a circumstance where a tortfeasor gratuitously provides a benefit to the plaintiff; the plaintiff owes no debt. The tortfeasor could not "charge" the victim or seek an offset for the gratuitous service. Yet, the tortfeasor is entitled to a credit for the benefits the tortfeasor conferred upon the plaintiff. Restatement (Second) of Torts § 920A.

Via Christi does not seek to treat the written-off amounts as a debt of the plaintiff. Via Christi seeks to be credited for having provided the services and having paid for those services without reimbursement from Medicare, plaintiff, or any other source. Therefore, the plain language of 42 U.S.C. § 1395cc(a)(1)(A)(i) does not apply in this case.

Further, the majority interprets the statute to mean that a plaintiff's recovery may never be reduced. This broad reading is contrary to the provisions of 42 C.F.R. § 411.35 which allows the Medicare provider to "collect or seek to collect, for the Medicare-covered services *from the beneficiary* or any entity" (emphasis added) those amounts paid by a workers' compensation plan, a no-fault insurer, or an employer health plan as the primary insurer. "If this amount exceeds the amount payable by Medicare (without regard to deductible or coinsurance), the provider or supplier may retain the third party payment in full without violating the terms of the provider agreement or conditions of assignment." 42 C.F.R. § 411.35(c)(1).

Further, the provider, although it cannot assert a lien against liability insurance, may look to an insurer for primary payment where prompt payment is expected. 42 U.S.C. § 1395y(b)(2)(A)(ii) (2000); 42 C.F.R. § 411.50. Additionally, upon payment of benefits, Medicare obtains a right of subrogation. Medicare may seek reimbursement from a beneficiary's settlement with a liability insurer or other third-party payer. 42 U.S.C. § 1395y(b)(2)(B).

Although the provisions of 42 U.S.C. § 1395y(b)(2), 42 C.F.R. § 411.35, and 42 C.F.R. § 411.50 do not apply in this case, these provisions reflect Congress' attempt to strike a balance between protecting beneficiaries and saving money for the Medicare system. *Joiner*, 709 So. 2d at 1216-17. Clearly, the legislative and regulatory scheme, although designed to assure a full recovery for the beneficiary's out-of-pocket expenses such as deductibles and co-insurance and to maximize any settlement, is not established to assure that the Medicare beneficiary/plaintiff keeps for himself or herself the amount recovered through a judgment or settlement. Rather, the scheme contemplates that Medicare or the provider should be made whole or nearly whole through any third-party payments.

Given this scheme, it would be against public policy and legislative intent to interpret 42 U.S.C. § 1395cc(a)(1)(A)(i) to apply in this situation when to do so would require the Medicare provider to incur a double expense of absorbing the unreimbursed cost and paying the cost again.

I would, therefore, affirm the trial court, although on different grounds. Rather than allowing the offset for the reasons stated by the trial court, I would allow Via Christi a credit for the amount it billed and for which there was no reimbursement, the write-off amount. The credit would be allowed against that portion of the past medical expense damage award which is owed by Via Christi pursuant to the jury verdict.

MCFARLAND, C.J., and BRAZIL, S.J., join in the foregoing dissenting opinion.